## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LINDA PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV00082 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Linda Propst, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 7, 9; see also Docket Entry 8 (Plaintiff's Memorandum), Docket Entry 10 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of May 4, 2012. (Tr. 141-42.) Upon denial of that application initially (Tr. 58-69, 83-86) and on reconsideration (Tr. 70-82, 90-97), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 98-99). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 25-54.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 9-10, 222-24), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the [] Act on September 30, 2014.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 4, 2012 through her date last insured of September 30, 2014.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: migraine headaches, hypertension, cervical degenerative disc disease.
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday and sit (with normal breaks) for a total of about 6 hours in an 8 hour workday. She can occasionally climb ropes, ladders or scaffolds.

. . .

6.  Through the date last insured, [Plaintiff] was
capable of performing past relevant work as a pharmacist.
This work did not require the performance of work-related
activities precluded by [Plaintiff's] residual functional
capacity.

. . .

7.  [Plaintiff] was not under a disability, as defined
in the [] Act, from May 4, 2012, the alleged onset date,
through September 20, 2014, the date last insured.

(Tr. 16-21 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted).  "Substantial

3

evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

When confronting that issue, the Court must take note that
"[a] claimant for disability benefits bears the burden of proving
a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981),
and that, in this context, "disability" means the "'inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months.'" Id.
(quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the
adjudicative process, the Social Security Administration has . . .
detailed regulations incorporating longstanding medical-vocational
evaluation policies that take into account a claimant's age,
education, and work experience in addition to [the claimant's]
medical condition." Id. "These regulations establish a
'sequential evaluation process' to determine whether a claimant is
disabled." Id.

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial
gainful activity,' i.e., currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides
benefits to disabled persons who have contributed to the program while employed.
The Supplemental Security Income Program . . . provides benefits to indigent
disabled persons. The statutory definitions and the regulations . . . for
determining disability governing these two programs are, in all aspects relevant
here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations
omitted).

5

specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475
n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.'  If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, "the claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, i.e., "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual functional capacity
('RFC')."  Id. at 179.[3]  Step four then requires the ALJ to assess

---

[2]  "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[3]  "RFC is a measurement of the most a claimant can do despite [the claimant's]
limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations
require RFC to reflect claimant's "ability to do sustained work-related physical
and mental activities in a work setting on a regular and continuing basis . . .
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule"
(internal emphasis and quotation marks omitted)).  The RFC includes both a
"physical exertional or strength limitation" that assesses the claimant's
"ability to do sedentary, light, medium, heavy, or very heavy work," as well as
"nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.   However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."   Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

## B.  Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ failed to properly account for the vocationally limiting effects of Plaintiff's well documented, intractable migraine headaches in the RFC."  (Docket Entry 8 at 4.)   In particular, Plaintiff asserts that the ALJ erred by finding that Plaintiff's

---

[3]  (...continued)
F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[4]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

migraine headaches constituted a severe impairment (id. at 5 (citing Tr. 16)), but then not including in the RFC any non-exertional limitations arising out of such headaches, such as restrictions on exposure to light and sound or to simple tasks (id. (citing Tr. 17)). Plaintiff also maintains that the ALJ took a March 2014 treatment note from Plaintiff's treating neurologist, Dr. John A. Porter, "out of context" by interpreting the note to mean that one of Plaintiff's headache medications, zonisamide, "prevented the return of her headaches in general," whereas Dr. Porter actually meant that zonisamide prevented only rebound headaches. (Id. at 9 (citing Tr. 19, 435).) Additionally, Plaintiff faults the ALJ's credibility analysis for two reasons: 1) the ALJ discounted Plaintiff's credibility based on her daily activities, without acknowledging "her qualifying testimony that she was only able to perform these activities when she was not suffering a headache" (id. at 6 (citing Tr. 41, and Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699, at *5-8 (M.D.N.C. July 23, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 14, 2015) (Biggs, J.))); and 2) "the ALJ failed to consider . . . [Plaintiff's] excellent work history with continuous earnings for 40 years" (id. at 10 (citing Tr. 144-45, 20 C.F.R. § 404.1529, Vitek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971), and Brooks v. Colvin, 1:15CV191-MOC, 2016 WL 1465966, at *5

(W.D.N.C. Apr. 14, 2016) (unpublished))). Plaintiff's arguments fall short.

### a. RFC

RFC measures the most a claimant can do despite any physical and mental limitations. <u>Hines</u>, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. <u>See</u> <u>Hines</u>, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). <u>See</u> 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. <u>See</u> 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. <u>See</u> <u>Reid v. Commissioner of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) (citing <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000).

As an initial matter, the Court should reject Plaintiff's suggestion that the ALJ's finding at step two that Plaintiff's migraines qualified as a severe impairment <u>required</u> the ALJ to

include restrictions related to that impairment when formulating the RFC:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of *de minimis* limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished); accord Burkstrand v. Astrue, 346 F. App'x 177, 180 (9th Cir. 2009) ("To the extent [a claimant] suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit."); Goodwin v. Colvin, No. 2:14-cv-11582, 2015 WL 1181392, at *26 (S.D.W. Va. Mar. 13, 2015) (unpublished) (describing as "fundamentally flawed" the plaintiff's argument that, because the ALJ found a severe impairment at step two, "she was bound to include functional limitations in the RFC finding to account for [the impairment]"); Perez v. Colvin, No. 3:13-CV-868 (JCH), 2014 WL 4852848, at *19 (D. Conn. Sept. 29, 2014) (unpublished) (holding ALJ "not required to assess additional limitations for each [severe] impairment"); Chappell v. Colvin, No. 1:10CV384, 2014 WL 509150, at *4 (M.D.N.C. Feb. 7, 2014) (unpublished) (ruling that ALJ need not "separately include limitations from each of [the plaintiff's] step two severe

10

impairments when assessing [the] RFC"), recommendation adopted, slip op. (M.D.N.C. Mar. 31, 2014); Burns v. Astrue, No. 2:11-cv-151-GZS, 2012 WL 313705, at * (D. Me. Jan. 30, 2012) (unpublished) (noting that "a finding of a severe impairment need not always result in limitations in an RFC"), recommendation adopted, No. 2:11-CV-151-GZS, 2012 WL 567254 (D. Me. Feb. 21, 2012) (unpublished); see also Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2001) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

Moreover, contrary to Plaintiff's argument (see Docket Entry 8 at 4-10), the ALJ sufficiently explained the basis for the RFC determination (see Tr. 17-20). First, the ALJ evaluated Plaintiff's subjective complaints, including her reported migraine symptoms (see Tr. 18, 19), but ultimately found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" (Tr. 18). As discussed in more detail below, substantial evidence supports the ALJ's analysis in that regard.

Second, the ALJ accorded "great weight" to the state agency physicians's opinions that Plaintiff remained capable of performing medium work. (Tr. 20.)[5] At step three of the SEP, the state

---

[5] The ALJ declined to give "great weight" to the state agency physicians's opinions that Plaintiff could only frequently engage in postural movements "in light of [Plaintiff's] testimony at the hearing, which was not available to the state agency consultant[s]" (Tr. 20), and Plaintiff has not challenged the ALJ's decision in that regard (see Docket Entry 8 at 4-10). The ALJ, however, did not
(continued...)

agency physicians found either <u>no</u> limitation or a <u>mild</u> deficit in concentration, persistence, or pace. (<u>See</u> Tr. 63, 75-76.) As a result, neither state agency physician included a restriction to simple, routine, and repetitive tasks ("SRRTs"), <u>or any other mental limitation</u>, in the RFC determination. (<u>See</u> Tr. 62-63, 65, 75-76, 78-79.)[6] Plaintiff has not challenged the ALJ's evaluation of the state agency physicians's opinions. (<u>See</u> Docket Entry 8 at 4-10.)

Third, the ALJ discussed consultative examiner Dr. Richard Pallazza's opinion that Plaintiff "had the capacity to perform

---

[5] (...continued)
specifically discuss or assign weight to the state agency physicians's opinions that Plaintiff needed to avoid concentrated exposure to hazards (such as machinery and heights) (<u>see</u> Tr. 66, 79), or state agency physician Dr. Shakra Junejo's opinion that Plaintiff should avoid concentrated exposure to pulmonary irritants (such as fumes, odors, gases, and poor ventilation) because such irritants could trigger Plaintiff's migraines (<u>see</u> Tr. 79). However, the ALJ's failure to address those opinions amounts to harmless error, given the circumstances of this case. The ALJ found that Plaintiff retained the RFC to return to her past relevant work as a pharmacist. (<u>See</u> Tr. 20.) The <u>Dictionary of Occupational Titles</u> reflects that the occupation "Pharmacist" does not involve any exposure to hazards or pulmonary irritants. <u>See Dictionary of Occupational Titles</u>, No. 074.161-010, 1991 WL 646724 (G.P.O. 4th ed. rev. 1991) ("<u>DOT</u>") (showing "Not Present" for "Moving Mech[anical] Parts," "High Exposed Places," and "Atmospheric Cond[itions]"); <u>see also Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u>, App'x D, ¶ 7 (U.S. Dep't of Labor 1993) ("<u>SCO</u>") (defining "[a]tmospheric [c]onditions" to include fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin").

[6] Plaintiff claims state agency physician Dr. Jeff Long "found that she would have cognitive limitations to simple tasks due to the pain from her headaches, limiting her to simple tasks . . . ." (Docket Entry 8 at 5.) However, review of Dr. Long's assessment reveals that, although he <u>discussed</u> consultative examiner Dr. Richard Pallazza's opinion that Plaintiff remained "capable of doing simple routine and repetitive tasks" (Tr. 63), Dr. Pallazza "attributed [his] functional impairments to [Plaintiff's] physical problems (which [wa]s outside his area of expertise), and concluded that a "[r]eview of [activities of daily living] offer[ed] no indication that [Plaintiff's] functioning [wa]s adversely impacted by any psychiatric issues." (<u>Id.</u>) Dr. Long concluded that Plaintiff's depression and post-traumatic stress disorder constituted non-severe impairments. (<u>Id.</u>)

12

[SRRTs], primarily due to her migraine headaches" (Tr. 20 (citing Tr. 294-97)), but gave that opinion "little weight" (id.). The ALJ noted that Plaintiff's "own activities support[ed] a conclusion that [Plaintiff] was able to perform detailed tasks," and that "Dr. Pallazza's own mental status exam findings do not support his conclusion restricting [Plaintiff] to simple, routine tasks." (Id.) Substantial evidence supports the ALJ's decision to discount Dr. Pallazza's opinion. Plaintiff reported to Dr. Pallazza that she reads the paper, enjoys crossword puzzles (see Tr. 294), sometimes goes to the movies, watches television, checks her email, and "pays careful attention to her personal finances" (Tr. 295 (emphasis added)). Plaintiff's ability to perform all of these activities undercuts Dr. Pallazza's restriction to SRRTs. Moreover, Dr. Pallazza observed that Plaintiff could follow his instructions, focus, and maintain attention during his examination (see Tr. 296-97), and assessed her "task persistence" as "very good" (Tr. 297). He further rated Plaintiff's Global Assessment of Functioning at 75, which indicates only slight difficulties in occupational and social functioning. (Tr. 296.)[7] Thus, Dr.

---

[7] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A GAF of 71 to 80 indicates that, "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors" and involves "no more than slight impairment in social, occupational, or school functioning." DSM-IV-R 34 (emphasis added and bold font omitted). A new edition of the treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

Pallazza's own findings on mental status examination do not support his restriction to SRRTs.

Although Plaintiff also suggests that the ALJ should have included a restriction on exposure to light and sound in the RFC (see Docket Entry 8 at 5), Plaintiff has not shown that her previous work as a pharmacist, which the ALJ found Plaintiff could continue to perform (see Tr. 20), exposed her to levels of light and sound that triggered her migraines. The DOT reflects that the occupation "Pharmacist" involves only "[m]oderate" noise intensity, DOT No. 074.161-010, 1991 WL 646724, and the SCO further clarifies that "[m]oderate" noise intensity rates numerically as a three on a scale of one to five, and provides "[i]llustrative [e]xamples" of a "business office where type-writers are used; department store; grocery store; light traffic; [and] fast food restaurant at off-hours," SCO App'x D, ¶ 5. Moreover, although Plaintiff testified that she missed entire days of work while employed as a pharmacist because of her migraines (see Tr. 41), she also stated that she never had to leave work because of a headache (see Tr. 41-42), which strongly implies that the levels of light and sound involved in her work as a pharmacist did not trigger disabling migraines.

Plaintiff's assertion that the ALJ misinterpreted Dr. Porter's statement regarding the effectiveness of zonisamide misses the mark. The ALJ stated only that "[p]rogress notes in March 2014 document that [Plaintiff] opted to go without her zonisamide due to

the substantial cost," and that "Dr. Porter noted that it had been quite successful in terms of preventing return of her headaches . . . ." (Tr. 19.) A review of Dr. Porter's March 13, 2014 treatment note reflects that he remarked as follows regarding Plaintiff's zonisamide:

> [Plaintiff] is doing probably about the same and had elected because of the change in her insurance status with being retired and reaching the age of 65 to attempt to go without her zonisamide which was a fairly substantial cost even though it is generic. <u>This has been quite successful in terms of relative failure of headache to return in many different form[s]</u>.

(Tr. 435 (emphasis added).) Dr. Porter's use of the descriptive phrase "in many different form[s]" to describe the types of headaches zonisamide prevented (<u>id.</u>) undercuts Plaintiff's contention that Dr. Porter's statement referred only to "rebound headaches from heavy medication usage" (Docket Entry 8 at 9). The ALJ thus accurately described Dr. Porter's March 2014 treatment note.

In sum, the ALJ supported her RFC determination with substantial evidence.

**b. Credibility Evaluation**

Plaintiff first contends that the ALJ erred in the credibility analysis by failing to consider Plaintiff's qualification that she could not perform any of her daily activities when she experienced her migraine headaches. (Docket Entry 8 at 5-7 (citing Tr. 18, 41,

167, 191, and Fletcher, 2015 WL 4506699, at *5-8).) Plaintiff's reliance on Fletcher misses the mark.

In Fletcher, the Court emphasized that the ALJ overstated the extent of the plaintiff's daily activities by neglecting to acknowledge the considerable qualifications the plaintiff placed on her ability to perform those activities, such as needing assistance to perform chores and stopping to rest multiple times. Id. Further, the Court focused on the lack of correlation between the daily activities relied on by the ALJ (such as cooking a Thanksgiving turkey and shopping online) and an ability to engage in the heavy lifting required of a medium exertion job for a full, eight-hour workday. Id.

In contrast, the ALJ here did not overstate Plaintiff's daily activities. Indeed, Plaintiff does not deny that she can perform the daily activities relied upon by the ALJ, such as managing rental property, working crossword puzzles, making breakfast, showering, caring for her dogs (including assisting one dog with walking and walking the other, 120-pound dog and taking it to a dog park), performing basic cleaning, reading the newspaper, watching television, talking to friends, spending time on the computer, driving on an extended road trip, shopping for groceries, paying bills, and handling a bank account. (See Docket Entry 8 at 5-7;

16

see also Tr. 18, 19, 31-32, 35-38, 294-95.)[8]  Nor does Plaintiff maintain that her ability to perform such a wide range of activities lacks correlation with an ability to perform medium work.  (See Docket Entry 8 at 5-7.)

Rather, Plaintiff points to her testimony, elicited for the first time on cross-examination, and after specific prompting by her attorney, that she can only perform such activities when she does not have a headache:

> Q:   That sounds pretty active.  That sounds like you're able to do things like anyone else that could continue working.  . . . [I]f you can do all these things why would you not continue working?
>
> A:   I can do those things when I don't have a headache. On the days that I do have a headache I am sensitive to light, noise, glare, odors, I can't stand sound, and I take medication and I curl up, I close my eyes and I go to sleep.

(Tr. 41; see also Docket Entry 8 at 6.)  Thus, the core issue surrounding Plaintiff's credibility did not involve whether Plaintiff could perform all of the daily activities in question (indeed, she admitted that she could perform them, (see Tr. 31-32, 35-38, 294-95)), but rather whether the intensity of Plaintiff's headaches, when such headaches occurred, prevented her from

_____

[8] Notably, Plaintiff testified that she took her 120-pound dog to the dog park "every day that it's not blistering hot . . . or pouring down the rain.  Those would be the two exceptions." (Tr. 38 (emphasis added).)  Plaintiff thus did not indicate, at that point in the hearing, that her headaches impacted her ability to take her dog to the dog park in any way.  Plaintiff also testified that she "eat[s] most meals out because no one ever taught [her] how to cook," again without qualifying that her headaches limited her ability to "eat most meals out." (Id. (emphasis added); see also Tr. 295 (reflecting Plaintiff's statement to Dr. Pallazza that she eats meals out 5 to fourteen times per week without qualification).)

performing these activities. The ALJ expressly found that Plaintiff's "statements concerning the <u>intensity</u>, persistence and limiting effects of [her] symptoms [we]re not entirely credible . . . ." (Tr. 18 (emphasis added).) By making that finding, the ALJ implicitly discounted Plaintiff's attorney-prompted qualification that the intensity of her headaches, when they occurred, prevented her from performing the wide array of daily activities she had previously testified, without qualification, she could perform. Accordingly, the ALJ did not err with regard to Plaintiff's qualification testimony.

Second, Plaintiff contends that, when evaluating Plaintiff's credibility, the ALJ "failed to consider . . . [Plaintiff's] excellent work history with continuous earnings for 40 years." (Docket Entry 8 at 10 (citing Tr. 144-45, 20 C.F.R. § 404.1529, <u>Vitek</u>, 438 F.2d at 1159, and <u>Brooks</u>, 2016 WL 1465966, at *5).) According to Plaintiff, she earned "over $100,000 per year as a pharmacist," and [t]hat she gave up such a high paying job is a testament to the frequency, duration and severity of her migraines." (<u>Id.</u>) Plaintiff's contention does not warrant relief.

Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u> ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for

18

evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Id. at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

SSR 96-7p also lists "prior work record and efforts to work" among the evidence that an ALJ should consider in evaluating a claimant's credibility. SSR 96-7p, 1996 WL 374186, at *5; see also 20 C.F.R. § 404.1529(c)(3) (requiring ALJ to consider "information about [a claimant's] prior work record" in assessing credibility). "However, while a long work history may be a factor supporting credibility, it is not controlling." Maner v. Colvin, No. CA

1:12-2969-RBH, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014) (unpublished); see also Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016) ("[A] claimant's work history is just one [credibility] factor among many, and it is not dispositive.") (internal quotation marks omitted).  Moreover, "[t]he ALJ's failure to consider plaintiff's lengthy consistent work history is not error when other factors are appropriately considered."  Lappin v. Colvin, No. 15-CV-353-CJP, 2016 WL 4679535, at *7 (S.D. Ill. Sept. 7, 2016) (unpublished); see also Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) ("That [the claimant's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.").

The ALJ here did not discuss Plaintiff's work history as part of the credibility analysis; however, the ALJ relied on other permissible factors in discounting Plaintiff's credibility.  (See Tr. 18.)  The ALJ first noted that she "considered the side effects of [Plaintiff's] medications," and then discussed Plaintiff's credibility as follows:

> [Plaintiff's] descriptions of her activities are inconsistent with her allegations of disability.  Her testimony describes an active lifestyle.  Additionally, the intensity of treatment, physical exam findings and objective medical evidence do not support disabling limitations. [Plaintiff] alleges that she stopped working because of headaches, but never had to leave the job because of headaches.

20

(Id.)  Thus, the ALJ relied on 1) side effects from Plaintiff's medications; 2) Plaintiff's extensive daily activities; 3) the intensity of treatment sought by Plaintiff; 4) the objective medical evidence, including physical examination findings; and 5) Plaintiff's testimony that she never had to leave work because of a headache, to support discounting Plaintiff's credibility. (Id.)

Elsewhere in the RFC analysis, the ALJ described the treatment sought by Plaintiff which supported the ALJ's conclusion that Plaintiff's impairments did not qualify as disabling. (See, e.g., Tr. 19 (observing that Plaintiff declined further heel injections because "she could live with the pain" and "declined a fitting for orthotics due to insurance issues"), id. (noting that, post-arthroscopy, Plaintiff "reported doing well with minimal pain" and that Plaintiff's meniscal tear "appear[ed] to have resolved without further treatment or limitations"), id. (remarking that migraine treatment "consist[ed] of an assortment of injectable medications" and that Plaintiff "opted to go without her zonisamide due to the substantial cost" despite its success in preventing the return of her headaches), 20 (discussing that treatment of hypertension "consisted of ongoing monitoring, adjustment of her medication, diet and exercise").)  The ALJ also detailed the objective medical evidence, including physical examination findings, that did not support disabling limitations. (See, e.g., Tr. 19 (noting full range of motion, good strength, and no effusion in Plaintiff's

21

knees, and that doctor described examination as "quite benign"), id. (discussing "normal attention and concentration with intact facial sensation" and normal gait and motor strength), 20 (remarking that Plaintiff had "a normal gait and intact grip strength"), id. (observing that Plaintiff's blood pressures remained "well controlled").)  Given that the ALJ relied on multiple permissible factors in reaching the decision to discount Plaintiff's credibility, any failure by the ALJ to expressly discuss Plaintiff's work history amounts to harmless error.  See Wavercak, 420 F. App'x at 94 ("That [the claimant's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."); see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

Under these circumstances, Plaintiff's challenge to the ALJ's credibility evaluation does not entitle Plaintiff to reversal or remand.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 9) be granted, and that judgment be entered for Defendant.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

September 20, 2016

23